48 F.3d 1211
NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
 Sonia Cabrera MENDEZ, Plaintiff, Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant, Appellee.
 No. 94-2012
 United States Court of Appeals,
First Circuit.
 March 9, 1995
 
 Appeal from the United States District Court for the District of Puerto Rico. [Hon. Jose Antonio Fuste, U.S. District Judge ]
 Raymond Rivera Esteves and Juan A. Hernandez Rivera, on brief for appellant.
 Guillermo Gil, United States Attorney, Maria Hortensia Rios, Assistant United States Attorney, and Robert J. Triba, Assistant Regional Counsel, Department of Health and Human Services, on brief for appellee.
 D. Puerto Rico
 AFFIRMED.
 Before TORRUELLA, Chief Judge, SELYA and BOUDIN, Circuit Judges.
 PER CURIAM.
 
 
 1
 Sonia Cabrera Mendez appeals from a district court judgment affirming a final decision of the Secretary of Health and Human Services to the effect that appellant did not meet the disability requirements of the Social Security Act for purposes of obtaining disability insurance benefits. As there is substantial evidence in the record to support the Secretary's decision, we affirm.
 
 
 2
 Appellant alleged an inability to work beginning January 25, 1990, due to a musculoskeletal condition, asthma, dysthymia and anxiety. Following a hearing at which appellant testified, the Administrative Law Judge ("ALJ") found that appellant had a severe impairment which prevented her from returning to her former work as an office receptionist and rendered her skills nontransferable, but twice concluded that she was not disabled at Step 5 of the familiar sequential analytic process. 20 C.F.R. Sec. 404.1520(f).
 
 
 3
 In his first decision the ALJ found that appellant retained a functional capacity to perform a wide range of light work which was not significantly compromised by her nonexertional limitations, so considering her age (42 years old), and education (12th grade), the denial of benefits was directed by application of the "grid," 20 C.F.R. Part 404, Subpt. P, App. 2, Rules 202.20, 202.21. The Appeals Council, however, remanded the case to the ALJ with instructions to obtain a vocational expert's [VE's] assessment of appellant's occupational base in light of the medical record relating to appellant's nonexertional limitations.
 
 
 4
 Following a new hearing at which appellant and a VE testified, the ALJ again denied benefits. The second denial was based on the VE's affirmative answer to the following hypothetical question.
 
 
 5
 [A]ssuming hypothetically ... that the claimant physically would be limited to sedentary or light activities ... where she would lift ten pounds frequently and 20 pounds maximum, and most of the work would be standing, but if necessary she could alternate her position as needed.... That the work should be performed ... in a clean work environment, in which she would not be subjected to excessive dust or dirt, fumes, noxious odors, excessive heat or cold. That from a non-exertional standpoint the claimant should not be placed in work where she would be under intensive tension or pressure in the performance of the work. In other words, it should be work that is of a routine, repetitive and simple nature. Also, it would be preferable that she not meet the public on a continuing [or frequent] basis.
 
 
 6
 ....
 
 
 7
 That any work that she would perform that might elicit any type of pain should be regarded as tolerable pain, meaning in effect it would not affect her attention or concentration in the performance of her work functions. Under these circumstances would she be able to return to her former employment or would there be other jobs existing within the national or local economy applicable to the claimant?
 
 
 8
 T.62-63 . In response, the VE opined that appellant could not resume her former work, but identified several unskilled jobs capable of being performed by a person with the stated limitations, and which exist in substantial numbers in the local economy.
 
 
 9
 The Secretary may meet her burden of proving the existence of a substantial number of suitable jobs in the economy by relying upon an expert's answer to a hypothetical question, so long as the hypothetical itself corresponds to conclusions that are supported by substantial evidence in the record. Arocho v. Secretary of HHS, 670 F.2d 374, 375 (1st Cir. 1982). To guarantee that correspondence, the ALJ must first resolve ambiguities in the evidence, decide what testimony to credit, and accurately transmit the relevant conclusions to the expert in the form of assumptions. Id.
 
 
 10
 Appellant argues that the hypothetical was defective because it did not fairly reflect the record evidence of her impairments. She contends that the ALJ was required instead to accept the VE's negative response to three other hypotheticals which posited a claimant with more severe functional limitations. We do not agree.
 
 
 11
 While hardly a model of articulation, the hypothetical nonetheless acceptably corresponds to conclusions that find substantial support in the medical evidence. The record shows that appellant had been repeatedly treated for depression and anxiety since at least October, 1990. All the examining psychiatrists reported, however, that appellant was coherent, logical, and oriented in three spheres (person, place, and time).
 
 
 12
 There was conflicting evidence about the severity of appellant's depressive disorder and its effect on her ability to work. On the one hand, appellant was admitted to the emergency room at least once with a diagnosis of major depression. In addition, a psychiatrist who treated her from March through October, 1991, diagnosed a dysthymic disorder with psychomotor retardation of such severity as to render appellant unable to understand and carry out even simple instructions under ordinary supervision, or to sustain any work performance, even in minimally stressful work situations.
 
 
 13
 On the other hand, a consulting psychiatrist concluded in December, 1991, that while appellant suffered serious mental limitations, she retained a "fair" ability to follow work rules and deal with work stresses, and a "good" ability to maintain concentration, understand, remember and carry out simple job instructions. Assessments by non- examining doctors in November, 1990 and June, 1991, also concluded that appellant had only moderate and insignificant limitations on the various capacities needed to maintain a consistent work schedule and carry out simple tasks.
 
 
 14
 The hypothetical assumption that appellant retained some functional capacity for simple tasks despite her depressive disorder thus was reasonably substantiated by the evaluating and non-examining doctors' reports. The ALJ was not required to accept the treating psychiatrist's bottom line conclusion that appellant was unable to engage in any work, see 20 C.F.R. Sec. 404.1527(e), especially as it was inconsistent with other substantial medical evidence in the record. See 20 C.F.R. Sec. 404.1527(d)(2). The hypothetical also fairly summarized the limitations which all the examining psychiatrists confirmed: appellant's need to avoid stress and to confine her activities to simple, solitary tasks. While reasonable minds may differ on how best to characterize the degree of stress which appellant might tolerate, we are not in a position to gainsay the ALJ's interpretation, but confine our analysis to the search for "substantial evidence." Id.; Rodriguez Pagan v. Secretary of HHS, 819 F.2d 1, 3 (1st Cir. 1987), cert. denied, 484 U.S. 1012 (1988). It is the ALJ's job, not the court's, to chose between competing evidence and inferences. See Ortiz v. Secretary of HHS, 955 F. 2d 765, 769 (1st Cir. 1991).
 
 
 15
 As to appellant's physical condition, again there was conflicting evidence. Although a neurologist tentatively diagnosed collagen disease, and chronic cervical and lumbar syndromes which might render appellant unable to work, the diagnosis was expressly conditioned on a reevaluation by a rheumatologist. Consulting rheumatologists, however, diagnosed several mild and moderate conditions, including myositis, bursitis, tendinitis, epicondylitis, costochondritis, psychogenic rheumatism, and a polyradiculopathy of unknown origin, but found normal muscle strength and no limitations on appellant's range of motion. Two residual functional capacity assessments concluded that appellant was physically capable of "medium" level work. Again, the ALJ's resolution of the conflict, limiting appellant to "light" work to avoid aggravating her diagnosed conditions, is supported by substantial evidence. Moreover, the hypothetical carefully echoed all the environmental limitations suggested by the medical reports to accommodate appellant's asthma and "very mild" restrictive pulmonary dysfunction.
 
 
 16
 Appellant's final argument is that the ALJ erred by assigning "little credibility" to appellant's own testimony that she suffered from totally debilitating pain, depression, and anxiety. The transcript of the hearing shows that appellant was thoroughly questioned as to all matters relevant to her subjective symptoms. See Avery v. Secretary of HHS, 797 F.2d 19 (1st Cir. 1986). We necessarily defer to the ALJ's evaluation of appellant's credibility, especially since it is supported by substantial medical evidence consistent with a lesser degree of pain and a greater functional capacity. See Frustaglia v. Secretary of HHS, 829 F.2d 192, 195 (1st Cir. 1987).
 
 
 17
 Although the record arguably could support a different conclusion, there is substantial evidence undergirding the ALJ's determination. Thus, we must uphold the Secretary's decision. See Ortiz, 955 F.2d at 770; Rodriguez Pagan, 819 F.2d at 3.
 
 
 18
 Affirmed.